UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

ELIZABETH PEREZ, Individually and on behalf of her minor sons, I.P. and L. P.,

Plaintiffs,

-against-

CATHOLIC CHARITIES OF THE DIOCESE OF ALBANY,

Defendant.

----------------------------------------------------------------x

No. 1:26-cv-1832 (AMN/PJE)

**COMPLAINT**

By and through her undersigned counsel, Plaintiff ELIZABETH PEREZ, Individually and on behalf of her minor sons, I.P. and L.P., as and for her Complaint against Defendant CATHOLIC CHARITIES OF THE DIOCESE OF ALBANY, hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an action for disability discrimination under Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), and the New York State Human Rights Law ("NYSHRL").

## PARTIES

2. Plaintiff ELIZABETH PEREZ is the biological mother and legal guardian of her minor sons I.P. and L.P. and resides in Schenectady County, New York. She brings this action on behalf of herself and her minor sons I.P. and L.P.

3. Defendant CATHOLIC CHARITIES OF THE DIOCESE OF ALBANY (hereinafter "Catholic Charities" or "CCDA") is a domestic not-for-profit corporation, organized and existing pursuant to the laws of the State of New York and which maintains its principal offices in Albany County, New York.

## JURISDICTION AND VENUE

4. As this action seeks to redress violations of Plaintiff's federal statutory rights under the ADA and Rehabilitation Act, this Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5. As Plaintiff's state law claims are so related to their federal claims that they form part of the same case or controversy as their federal claims, this Honorable Court has supplemental jurisdiction over such state law claims under 28 U.S.C. § 1367(a).

6. The events giving rise to the claims asserted herein occurred primarily in Rensselaer County, New York, which is within this judicial district and, therefore, venue in the Northern District of New York is proper under 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

7. At the time of the events set forth herein, Infant Plaintiff I.P. was 11 years old.

8. At the time of the events set forth herein, Infant Plaintiff L.P. was 7 years old.

9. I.P. has autism and is nonverbal, and he has also been diagnosed with depression, anxiety and post-traumatic stress disorder ("PTSD").

10. L.P. has autism and attention deficit hyperactivity disorder ("ADHD").

11. Through its Tri-County Services Division, which provides various individual and community services throughout Albany, Rensselaer and Schenectady Counties, Defendant Catholic Charities owns and operates Camp Scully, a co-ed, day and overnight summer camp for children in grades Pre-K through 11, located in North Greenbush in Rensselaer County, New York.

12. On July 14, 2025, Plaintiff registered I.P. and L.P. into Camp Scully's overnight camp for the Week 5 (07/27/2025-08/01/2025) and Week 6 (08/03/2025-08/08/2025) sessions.

13. In doing so, Plaintiff was in direct email communication with Camp Scully's Registrar.

14. As part of these communications, Plaintiff promptly provided all required medical forms and documentation on July 15, 2025, which, among other things, disclosed I.P.'s and L.P.'s, disabilities, diagnoses, and medications.

15. For instance, I.P.'s medical documentation disclosed his diagnoses or Autism, Depression, Panic, Anxiety Disorder, and Other Mental, Emotional or Social Health Issue[s], noting, *inter alia*, he "has Autism (profound), non verbal (uses dynavox and low tech communication board), depression, generalized anxiety disorder, and PTSD" and noted his decompensating indicators, including, "crying, screaming, falling to the ground, slaps (light taps) on others when frustrated or anxious."

16. Likewise, L.P.'s medical documentation disclosed his diagnoses of ADHD, Autism, and Panic, Anxiety Disorder, and noted his decompensating indicators, including "Hyperactivity, fast repetitive speech, lack of awareness of self and others, increased oral outbursts, anger and happiness is heightened . . . , withdrawn stare, repetitive speech, hard time with demands, hard time with fine motor skills . . . , crying, worry, screaming/shrieking, refusal of demands."

17. Notwithstanding their disabilities, both I.P. and L.P. were capable of attending and participating in Camp Scully's overnight camp program, with or without reasonable accommodations.

18. Camp Scully's Registrar confirmed receipt of this documentation and raised no issues; likewise, nobody from Camp Scully raised any issues regarding I.P.'s or L.P.'s disabilities or their needs at any time between Plaintiff's provision of the medical documentation on July 15, 2025 and the first day of camp, July 27, 2025.

19. In preparation for camp, Plaintiff spent about $53.00 to purchase certain items listed on Camp Scully's overnight campers' checklist.

20. On July 27, 2025, at about 5:00pm, Plaintiff brought I.P. and L.P. to check in for their first week.

21. Upon arrival, after passing an initial headlice check, the boys were escorted with their mother to the dining hall, where I.P. and L.P. were assigned to their camp group, the Grasshoppers.

22. Plaintiff explained to the night counselor that I.P. was nonverbal and uses a low-tech communication board, which she had inadvertently left at home and noted she was going immediately to retrieve and bring back later than evening.

23. The counselor responded, in sum and substance, "That is not a problem at all. I have a little brother who has autism and is nonverbal. It won't be a problem."

24. Plaintiff left the camp about 5:30pm, planning to retrieve I.P.'s communication board.

25. At about 5:59pm, Camp Director Diane McNamara called Plaintiff and left a voicemail, stating the camp is "not equipped to handle your boys" and asking her to come pick them up.

26. Plaintiff got back to the camp at about 6:34pm and met with Director McNamara and the camp nurse, Helen.

27. At the meeting, McNamara confirmed that both I.P. and L.P. were well behaved; however, she explained the boys could not stay because they have autism.

28. At no point did McNamara or any camp official engage in an interactive process with Plaintiff to determine what if any reasonable accommodations could be made to allow I.P. and L.P. to remain and participate in the camp program.

29. Indeed, during a later call with various agents of Defendant, camp officials could not even identify what I.P.'s or L.P.'s needs were or what, if any, accommodations could have been provided, and they could not explain with any specifics or details what it was about their disabilities, other than the label "autism," that warranted their exclusion

30. At no point did any camp official offer to make arrangements for I.P. and L.P. to enroll in a later camp session.

31. Neither I.P. nor L.P. posed a danger or threat to other campers, camp staff, or anyone else or were readily capable of participating in Camp Scully's programs and activities.

32. Allowing I.P. and L.P. to participate in Camp Scully's programs and activities would not have required any substantial alterations to them and would not have caused Defendant an undue burden.

33. No legitimate reason justified Defendant's exclusion of I.P. and L.P. from participating in Camp Scully.

34. As a result of their exclusion, both I.P. and L.P. suffered significant emotional distress, including without limitation, embarrassment, humiliation, depression, anxiety and feeling excluded and unwanted.

35. Also as a result of her sons' exclusion from camp, Plaintiff suffered significant emotional distress, including without limitation, sadness, depression, anxiety, and anger.

36. Moreover, given Plaintiff's limited financial means, Camp Scully had subsidized the entire cost of I.P.'s and L.P.'s two-week camp enrollment; however, after they were excluded, Plaintiff had to use OPWDD self-directed funding to pay for alternative care and activities for her boys for the time they would have been at camp, which funds could have been used for other recreational and/or therapeutic activities for the them had they not been excluded from camp and, thus, they were deprived of those additional funds and opportunities.

37. Plaintiff has also incurred out-of-pocket expenses for travel and mental health treatment of herself and her children arising from the events described herein.

**COUNT I**
**DISABILITY DISCRIMINATION**
**Rehabilitation Act, 29 U.S.C. § 701, *et seq.***

38. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "37" above.

39. The Rehabilitation Act provides, in pertinent part: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

40. Under the Rehabilitation Act, unlawful discrimination includes failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.

41. Camp Scully is a "program or activity" of the Defendant under the Rehabilitation Act. *See* 29 U.S.C. § 794(b).

42. Upon information and belief, at all relevant times, Defendant received federal financial assistance generally and, specifically, for Camp Scully.

43. At all relevant times, I.P. and L.P. had autism and other developmental and/or mental health impairments and, thus, had a "disability" as that term is defined by the Rehabilitation Act.

44. At all relevant times, I.P. and L.P. were qualified, with or without a reasonable accommodation, to participate in the programs and/or activities provided by Camp Scully and, thus, were qualified individuals under the Rehabilitation Act.

45. By dint of its conduct as alleged herein, and specifically by (1) failing to reasonably accommodate I.P.'s and L.P.'s disabilities, and (2) by excluding I.P. and L.P. from Camp Scully

solely because of their disabilities, Defendant violated I.P.'s, L.P.'s and Plaintiff's rights under the Rehabilitation Act.

46. As a direct and proximate result, I.P., L.P. and Plaintiff have been caused to suffer pecuniary and non-pecuniary injuries, including, without limitation, emotional distress and mental anguish, incidental damages, and consequential damages.

**COUNT II**
**DISABILITY DISCRIMINATION**
**ADA, 42 U.S.C. § 12181 *et seq.***

47. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "37" above.

48. The ADA provides, in pertinent part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

49. Camp Scully is a place of public accommodation under the ADA. See 42 U.S.C. § 12181(7); *Doe v. Deer Mt. Day Camp., Inc*., 682 F.Supp.2d 324, 342 (S.D.N.Y. 2010) (holding day camp was place of public accommodation under ADA).

50. At all relevant times, I.P. and L.P. had autism and other developmental and/or mental health impairments and, thus, had a "disability" as that term is defined by the ADA.

51. At all relevant times, I.P. and L.P. were qualified, with or without a reasonable accommodation, to participate in the programs and/or activities provided by Camp Scully and, thus, were qualified individuals under the ADA.

52. By dint of its conduct as alleged herein, and specifically by (1) failing to reasonably accommodate I.P.'s and L.P.'s disabilities, and (2) by excluding I.P. and L.P. from Camp Scully

solely because of their disabilities, Defendant violated I.P.'s, L.P.'s and Plaintiff's rights under the ADA.

53. As a direct and proximate result, I.P., L.P. and Plaintiff have been caused to suffer pecuniary and non-pecuniary injuries, including, without limitation, emotional distress and mental anguish, incidental damages, and consequential damages.

**COUNT III**
**DISABILITY DISCRIMINATION**
**NYSHRL, N.Y. Exec. L. § 290, *et seq.***

54. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "37" above.

55. The NYSHRL provides, in pertinent part: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . ." N.Y. Exec. L. § 296(2)(a).

56. The NYSHRL also provides that, with respect to places of public accommodation, the term "discriminatory practice" includes, *inter alia*: (i) a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations; [and] (ii) a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such

steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden . . . ." N.Y. Exec. L. § 296(2)(c).

57. Camp Scully is a "place of public accommodation, resort or amusement" under the NYSHRL. *See* N.Y. Exec. L. § 292(9).

58. At all relevant times, I.P. and L.P. had autism and other developmental and/or mental health impairments and, thus, had a "disability" as that term is defined by the NYSHRL. See N.Y. Exec. L. § 290(21).

59. By dint of its conduct as alleged herein, and specifically by (1) failing to reasonably accommodate I.P.'s and L.P.'s disabilities, and (2) by excluding I.P. and L.P. from Camp Scully solely because of their disabilities, Defendant violated I.P.'s, L.P.'s and Plaintiff's rights under the NYSHRL.

60. As a direct and proximate result, I.P., L.P. and Plaintiff have been caused to suffer pecuniary and non-pecuniary injuries, including, without limitation, emotional distress and mental anguish, incidental damages, and consequential damages.

**JURY DEMAND**

61. Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

A. Accept jurisdiction over this matter and all parties hereto;

B. Empanel a jury to hear and decide all claims and questions triable thereto;

C. Enter an Order adjudging and declaring that Defendant violated I.P.'s, L.P.'s, and Plaintiff's rights under the ADA, Rehabilitation Act, and NYSHRL;

D. Enter an Order awarding to Plaintiff compensatory damages, with pre- and post-judgment interest;

E. Enter an Order awarding to plaintiff the costs and disbursements of prosecuting this action, including reasonable attorneys' fees; and

F. Enter an Order awarding to plaintiff such additional relief as the Court deems just, proper, and equitable under the circumstances.

Dated: Newburgh, New York
September 26, 2026

GOLDMAN LAW, PLLC
*Attorneys for Plaintiff*

By: *\/s/ Jonathan R. Goldman*
Jonathan R. Goldman, Esq. (520155)
372 South Plank Road, Ste. 2
Newburgh, New York 12550
(845) 534-6472 Ext. 1001 [Tel.]
(845) 579-3064 [Fax]
jgoldman@jrgoldmanlaw.com